UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTY LYNN PRYOR,<br><br>    Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:16-cv-3018-KJN<br><br><br>ORDER |

Plaintiff Kristy Lynn Pryor seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") that plaintiff's disability ended on October 31, 2013, for purposes of receiving Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act") as an adult.[1] Plaintiff filed a motion for summary judgment, which the Commissioner opposed by filing a cross-motion for summary judgment. (ECF Nos. 14, 17.) Thereafter, plaintiff filed a reply brief. (ECF No. 18.) For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

1

I.   BACKGROUND

Plaintiff was born on May 25, 1994; has a high school education; can communicate in English; and has no past relevant work. (Administrative Transcript ("AT") 28, 78.)[2] She received SSI benefits based on disability as a child, but after her case was redetermined under the disability rules for adults upon attaining age 18, she was found no longer disabled as of October 31, 2013. (AT 20.) Pursuant to plaintiff's request, an administrative law judge ("ALJ") conducted a hearing on January 27, 2015, at which plaintiff, representing herself; plaintiff's mother; and a vocational expert ("VE") testified. (AT 20, 36-77.) The ALJ subsequently issued a decision dated May 4, 2015, determining that plaintiff's disability had ended on October 31, 2013, and that she had not become disabled again since that date. (AT 20-29.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 1, 2016. (AT 1-7.) Plaintiff subsequently filed this action on December 27, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ erred in concluding that plaintiff did not meet Listing 12.05C; (2) whether the ALJ failed to properly analyze the opinions of the examining and non-examining physicians; (3) whether the ALJ erroneously discounted plaintiff's credibility and the credibility of third party witnesses; (4) whether the ALJ's residual functional capacity ("RFC") assessment was unsupported; (5) whether the VE's testimony was inadequate; and (6) whether the Appeals Council erred by declining review.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff "attained age

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

18 on May 24, 2012, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18. The claimant was notified that she was found no longer disabled as of October 31, 2013, based on a redetermination of disability under the rules for adults who file new applications." (AT 22.) At step two, the ALJ found that, since October 31, 2013, plaintiff had the following severe impairments: borderline intellectual functioning, generalized anxiety disorder, posttraumatic stress disorder, bipolar disorder, and seizures. (Id.) However, at step three, the ALJ determined that, since October 31, 2013, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 23.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that since October 31, 2013, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, unskilled work with occasional public and coworker contact and must avoid working at heights, around moving machinery and cannot drive.

(AT 25.) At step four, the ALJ determined that plaintiff had no past relevant work. (AT 28.) Nevertheless, at step five, the ALJ found that since October 31, 2013, in light of plaintiff's age, education, work experience, RFC, and the VE's testimony, there were jobs that exist in significant numbers in the national economy that plaintiff could perform. (AT 28-29.) Consequently, the ALJ concluded that plaintiff's disability ended on October 31, 2013, and that plaintiff had not become disabled again since that date. (AT 29.)

////
////
////
////

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ erred in concluding that plaintiff did not meet Listing 12.05C*

The claimant "bears the burden of proving that ... she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." <u>Burch v. Barnhart</u>, 400 F.3d 676, 683 (9th Cir. 2005). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify...For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530-31 (1990). A determination of medical equivalence must rest on objective medical evidence. See <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings…A generalized assertion of functional problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."). Furthermore, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability." <u>Key v. Heckler</u>, 754 F.2d 1545, 1549 (9th Cir. 1985). Instead, all of the specified medical criteria must be met or equaled. <u>Id.</u> at 1550.

In this case, plaintiff contends that the ALJ erred in finding that plaintiff did not meet Listing 12.05C for intellectual disability.[4] "A claimant satisfies Listing 12.05C, demonstrating

---

[4] As the Commissioner notes, the criteria for Listing 12.05C have since been revised, but the version that was in effect at the time of the ALJ's decision continues to govern this case.

'intellectual disability' and ending the five-step inquiry, if [s]he can show (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C). The Commissioner concedes that the ALJ's analysis with respect to prongs (2) and (3) was insufficient, but notes that any such insufficiency was inconsequential, because plaintiff has not discharged her burden of showing deficits in adaptive functioning for purposes of prong (1). That argument has merit.

Deficits in adaptive functioning have been defined as "the inability to learn basic skills and adjust behavior to changing circumstances." Wood v. Berryhill, 692 Fed. App'x 816, 817 (9th Cir. Jun. 21, 2017) (unpublished) (citing Hall v. Florida. 134 S. Ct. 1986, 1994 (2014)). Here, the consultative examining psychologist, Dr. Joe Azevedo, found that plaintiff had the ability to understand, remember, and carry out simple one-step instructions. (AT 469.) Plaintiff herself reported that she was able to complete all of her own personal grooming and hygiene, played basketball and swam, watched television, could prepare her own meals, and shopped in stores for junk food. (AT 191-92, 465.) She also testified that she had worked for a brief time cleaning offices, but that the job ended when she had a seizure. (AT 58.)[5] Therefore, although plaintiff may have severe mental impairments, she has not adequately shown that she has deficits in adaptive functioning.

*Whether the ALJ failed to properly analyze the opinions of the examining and non-examining physicians*

In various parts of plaintiff's brief, plaintiff suggests that the ALJ failed to properly analyze or adopt the opinions of the examining and non-examining physicians. Upon careful review of the opinions, that argument is unpersuasive.

In this case, on July 11, 2013, consultative examining psychologist, Dr. Joe Azevedo, issued moderate mental limitations in various domains of mental functioning, as well as a

---

[5] Plaintiff acknowledged that she had had no more seizures since she started taking her medication for seizures. (AT 68.)

moderate to marked limitation in plaintiff's ability to manage work pressures and respond to changes in a typical work environment. (AT 469.) On August 12, 2013, non-examining state agency psychologist Dr. Phaedra Caruso-Radin opined that plaintiff could understand, remember, and carry out a two-step command involving simple instructions, and maintain concentration, persistence, and pace for such up to 4-hour increments with customary work breaks; complete a usual workday and workweek; adapt to simple and routine changes; travel; and respond to hazards, although she would function better in a non-public environment. (AT 472.) Subsequently, on April 2, 2014, non-examining state agency psychiatrist Dr. Colsky opined that plaintiff was capable of performing non-public simple, repetitive tasks. (AT 649.)

An ALJ may synthesize and translate assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC assessment. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008); see also 20 C.F.R. § 404.1545 (defining RFC as "the most you can still do despite your limitations"). Here, the ALJ's RFC for simple, unskilled work with occasional public and coworker contact adequately captures most of the moderate mental limitations assessed by consultative examiner Dr. Azevedo, because such work logically involves less concentration, changes, mental stamina, and social interaction. Moreover, the Ninth Circuit has already held that moderate mental limitations do not even require vocational expert testimony. Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007). In Hoopai, a medical source determined that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Id. After the ALJ utilized the grids at step five to determine that the claimant was not disabled, plaintiff contended on appeal that the ALJ was required to seek vocational expert testimony regarding the limitations assessed. Id. at 1075. The Ninth Circuit rejected this argument, holding that those moderate limitations were not sufficiently severe to prohibit the ALJ from relying on the grids without the assistance of a vocational expert. Id. at 1077.

Additionally, the court finds that the ALJ's RFC adequately incorporated Dr. Azevedo's assessed moderate to marked limitation in plaintiff's ability to manage work pressures and respond to changes in a typical work environment. Simple, unskilled work with only occasional public and coworker contact plainly demands less work pressure and change.

Finally, the ALJ's failure to include a limitation to entirely non-public work was harmless, because the VE specifically testified that the representative occupations of housekeeper and hand packager could still be performed by someone who could not work directly with the public. (AT 72.)

Consequently, the ALJ's evaluation of the opinion evidence was supported by the record and by the proper analysis, and any technical error was harmless.

*Whether the ALJ erroneously discounted plaintiff's credibility and the credibility of third party witnesses*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

Here, the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's credibility.

First, the ALJ properly found that the degree of limitation alleged by plaintiff was inconsistent with the medical evidence. (AT 27.) As noted above, the medical opinion evidence reasonably suggests that plaintiff was capable of at least the simple, unskilled work identified by the VE. Although both plaintiff and the Commissioner selectively cite to portions of treatment records potentially suggesting that plaintiff's symptoms were more severe or less severe, respectively, it was not unreasonable for the ALJ to conclude that the weight of the medical evidence was inconsistent with the extreme limitations claimed by plaintiff.

Second, the ALJ rationally found that plaintiff's medications had been relatively effective in controlling her symptoms. (AT 28.) At the hearing, plaintiff admitted that she had not been taking her medications in the past, but since she had started taking medication consistently about two months prior to the hearing, her symptoms improved. (AT 64-66.) She also acknowledged that she had not had any seizures since starting her seizure medications. (AT 68.)

Third, the ALJ observed that plaintiff had provided inaccurate information to her treatment providers. (AT 28.) On November 1, 2013, plaintiff was admitted to a hospital after being struck by a vehicle, and discharged in stable condition a few days later on November 4, 2013. (AT 549-57.) However, plaintiff later apparently told her therapist that she had been hit by a truck and had been hospitalized for several months for severe injuries. (AT 757.)

Finally, the ALJ also properly discounted the statements and testimony from third party witnesses, including plaintiff's mother. "[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and citation omitted). Here, the ALJ summarized the third-party statements and testimony in detail, clearly indicating that she considered the information, but reasonably noted that they were contrary to the medical opinions of record. (AT 27.) Moreover, the statements and testimony essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to the third-party testimony. See Molina, 674 F.3d at 1115-22.

*Whether the ALJ's RFC assessment was unsupported*

Plaintiff's contention that the ALJ's RFC was unsupported appears to be based on her prior arguments that the ALJ's RFC did not properly account for the limitations assessed by the consultative examining psychologist and the state agency physicians. As discussed above, those arguments are unavailing, and the ALJ's RFC was supported by substantial evidence in the record as a whole.

*Whether the VE's testimony was inadequate*

Plaintiff's argument regarding the inadequacy of the VE's testimony again hinges on plaintiff's previous arguments that the ALJ's RFC did not include all of the necessary limitations, and that the corresponding hypothetical on which the VE based his testimony was therefore deficient. However, for the reasons outlined above, the ALJ's RFC and hypothetical to the VE were properly supported, and the VE's testimony was thus adequate.

*Whether the Appeals Council erred by declining review*

Finally, this court plainly lacks subject matter jurisdiction to review the Appeals Council's decision to decline review. See Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1231 (9th Cir. 2011) ("When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the

Commissioner."). To be sure, plaintiff could have more appropriately requested this court to remand the action for further consideration of additional medical evidence presented for the first time to the Appeals Council. See Brewes v. Comm'r of Soc. Sec., 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). However, even if plaintiff had done so, the additional evidence does not compel remand. Although the additional evidence documents a diagnosis of schizoaffective disorder and plaintiff's subjective allegations of auditory and visual hallucinations, it does not fundamentally disturb the weight of mental functional capacity opinions in the record, which continue to provide substantial evidence for the ALJ's RFC assessment.

V.  CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is GRANTED.

3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: February 26, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE